Good morning. May it please the court, my name is John Klein and I represent the appellant Michael Carona. I'd like to reserve if I could two minutes for rebuttal. On August the 13th 2007 the prosecutors in this case faced a problem. The statute of limitations was imminent and the evidence was weak. They chose to equip their informant Don Heidel with two fake grand jury subpoena attachments and sent him to interrogate Mr. Carona, whom they knew was represented by counsel. And they instructed Mr. Heidel to try to get Mr. Carona to incriminate himself. Mr. Heidel testified to the trial. The district court later found that that conduct violated the no-contact rule, what this court has described as the venerable no-contact rule. The district court found that the jury acquitted the defendants on the August 13, 2007 in two separate counts. They charged it as an effort to influence Mr. Heidel's grand jury testimony under 1512 B1 in count five and they charge it as an effort to cause Mr. Heidel to withhold testimony under 1512 B2A in count six. The jury acquitted on the influence count and it convicted on the The district court, as I mentioned, found that the prosecutor's tactics violated the no-contact rule but it declined to impose any of the case-related sanctions that Mr. Carona requested. Indeed, it declined to impose any sanction at all for that conduct. In addition, the district court held that an effort to persuade someone to lie, which is how the government cast this case in the district court, fell within the prescription in 1512 B2A against endeavoring to cause someone to withhold testimony from the grand jury. So in effect, the court found that an effort to cause someone to give false testimony in the grand jury amounts to causing someone to withhold testimony from the grand jury. I want to turn to the statutory question first, even though it's the second issue in our brief. As I mentioned, the government cast this case throughout the trial proceedings and even post-trial as an effort by Mr. Carona to cause Mr. Heidel to lie to the grand jury. In response to a pretrial motion, the government described count six as an obstruction charge and a witness tampering charge, which defendant committed by attempting to corruptly persuade Heidel to lie. That's at page 238 of the excerpts of record. Mr. Heidel himself in his testimony was asked repeatedly what what he thought Mr. Carona was trying to do during this August 13th meeting. And his testimony invariably was along the lines of he was trying to construct a cover story with me. He was trying to get me to lie. He was trying to get me to get our stories straight. At no point that I've seen in that, in Mr. Heidel's testimony, does he characterize what Mr. Carona was trying to do, in his opinion, as to get him to withhold evidence from the grand jury. Every case that we have found that involves an effort to persuade someone to lie, which again is how this case was presented to the jury in the district court, has been prosecuted under 1512 B1, the influence prong of the witness tampering statute. We have not found any case other than this one, which prosecutes that conduct, trying to persuade someone to give false testimony to the grand jury or to a trial that has prosecuted it under 1512 B2A. And that makes sense for a number of reasons. First of all, it complies with the plain language of the two statutes. It is a much more natural fit to say that someone who tries to get someone to lie in the grand jury or trial is trying to influence that person's testimony than it is to say that when you're trying to persuade someone to give false testimony in a proceeding, you are trying to get them to withhold testimony from the proceeding. Well, even the terminology in the statute, of course we deal with statutes all the time and we know that sometimes it's hard to understand what different sections are supposed to mean. Subsection 1 goes beyond influence and includes delay or prevent. So in that sense, I understand the dichotomy you're trying to suggest that influence, effect, change the substance as opposed to withhold, not testify at all. And yet even subsection 1 includes prevent, which would suggest an entire blocking or prevention of testimony. So it looks to me like the two subsections themselves may contain the seed of the problem to the extent that they, at least in substantial measure, overlap. Well, let me make two responses to that, Your Honor. The first is that I think that to prevent someone from testifying and to cause someone to withhold testimony can be meaningfully distinguished. You can prevent someone from testifying, for example, by, let's say, concealing from them the fact that they're supposed to testify, by taking some measure to physically stop them from testifying. You cause them to withhold testimony, for example, by corruptly persuading them to invoke a privilege that they shouldn't be able to invoke or something like that. So I think there's a difference between preventing someone and causing someone to withhold. More generally, though, Your Honor, I think the – I accept the point that in some instances different statutory provisions can overlap. What we have here, though, is a construction of the withhold provision that would cause it to completely subsume the influence provision. The district court talked in terms of a Venn diagram. I think what he had in mind was two circles that have some little area of overlap. And that's understandable. Statutes can't be hermetically sealed from each other. The problem we have here is that the Venn diagram that results from the government's interpretation of the withhold provision is you have a big circle that's the withhold provision, and completely included within that withhold provision is the influence provision. You can anticipate the government will be asked to explain what part of the circle isn't entirely within. Do you have a sense of what they're likely to say? And expecting this to be a key issue on – with regard to this point, what do you have to say about what the – what you expect the government to say? You know, Your Honor, I've been asking that question both to myself and aloud ever since this issue came up. And I have yet to hear an answer. I would like to hear it. About 10 or 15 minutes, I guess you probably will. I hope so. I would like to hear an example of an influencing that is not also a withholding under the government's interpretation of the statute. I've never heard one yet. Counsel, the striking thing about this particular case is that the jury acquitted on the one and convicted on the other. Would we be here with the same argument if the government had only charged your client with withholding testimony and not charged him with influencing testimony? Yes, we would. Because withholding doesn't include the conduct here, regardless of whether the conduct is charged. But if somebody's – if somebody's – if Mr. Hadle was, in effect, withholding by offering a different explanation or by failing to testify in – failing to answer certain questions or failing to answer questions honestly, what's the difference between not showing up and only answering things with a partial truth? Because when you – when you lie – when you persuade someone to lie, you are influencing their testimony. When you persuade someone to withhold testimony, if you – if you interpret the withhold provision as including withholding the truth, in other words, giving false testimony, then again, the withhold provision subsumes the influence provision. And it's also, in my view, Your Honor, contrary to the plain language of that statute. It doesn't say withhold truthful testimony. It says withhold testimony. And when you withhold testimony, it means you don't testify. It doesn't mean you testify falsely. And I think particularly where you have the influence provision in 1512b1, which clearly and comfortably accommodates efforts to get someone to lie. Let's look at Judge Clifton's question. What do you do with the word prevent then in b1? Well, I think prevent can cover circumstances where – I'll just make up an example. You physically restrain someone from going to court. They want to go. They want to go testify. Is it limited to that? No, I don't think so. I think – I mean, I think that's an easy case for you. But is it limited to that? If it's not limited to that, then what else might it reach? Well, I think it could reach, for example, probably efforts to coerce someone not to go. In other words, I think there are instances of prevention that are different from – Well, if you coerce somebody not to go, couldn't that also be covered by causing or inducing any person to withhold testimony? And you've got overlap. Under your definition, you've got overlap. Oh, I think – I think it is possible, Your Honor, that the prevent provision and the withhold provision have some areas of overlap. The point, though, is that they don't – neither completely subsumes the other. There are instances of prevent that are not withholding, and I think there are instances of withholding that are not preventing. The problem we've got with the government's interpretation of 1512b2a here, apart from the plain language problem, the legislative history problem, and the case law problem, is that under the government's interpretation of the withhold provision, it completely subsumes the influence provision, that there is not just overlap, it's complete elimination, which is contrary, as the Supreme Court recently said in the Corley case, which we cited in our briefs, interpreting – addressing a similar problem in a government-proposed interpretation. That's a cardinal rule of statutory interpretation, that you don't render some provision meaningless. Here, as I see it, the government's interpretation of 1512b2a renders the influence provision meaningless. I'd like to reserve two minutes. I'd like to turn briefly to the no-contact issue. The government's first argument, of course, is that there was no violation. We've addressed that in our briefs. I'd like to turn, unless the Court has questions on that, to the issue of remedy. Yeah, I would like you to address the question of whether there's a violation here. All right. This Court, in the Talao case, which is the latest word from this Court on the scope of 2-100, particularly following the McDade Amendment, set out a three-part test. And the three-part test involves fully developed adversarial roles – this is 222F3 at 1139 – fully defined adversarial roles, impending grand jury proceedings, and awareness on the part of the responsible government actors of the target's ongoing legal representation. All three of those requirements were clearly met here. Okay. If that's the case, if that's our test, then the question of a fake subpoena is irrelevant to that test, isn't it? Then if they had just sent Mr. Hadle in there and said, go to lunch and see what you can figure out, and we'll just wire you, that would have violated the test, and the fake subpoena really is a red herring here. I think that's a way of reading Talao. I think it is, Your Honor. But there's one other feature to Talao that adds a wrinkle and that I think does make the fake subpoena relevant. What Your Honor has proposed, I think, is the broadest reading of Talao. But what's interesting about Talao is that it found those three requirements satisfied under the facts of that case, but went on to say that the prosecutor had not violated Rule 2-100. And what the Court did in making that And, of course, what happened in Talao was you had a corporate employee who felt that she was being coerced into giving perjury. Even though the corporation was represented, she went to the prosecutor, said she was being coerced into giving perjury. The prosecutor talked to her, and the Court found that that didn't amount to a violation of the rule, even though these three requirements were satisfied. So the Court looked at the purposes of the rule. If you look to the purposes of the rule here, the three requirements are satisfied. Let's say there's a further question whether the rule has been violated. You look to the purposes, and the District Court found correctly, in our view, that this is exactly the circumstance where the protections of Rule 2-100 are most necessary. You have a represented target. He is under investigation. He is being interrogated by the prosecutor without his knowledge, with the use of deception. In other words, they sent Mr. Heidel in twice, on July the 7th and July the 15th, to interrogate him. Now they're desperate. The statute of limitations is on top of them. And so they sent him in with these fake grand jury subpoenas, contrary to Hamad, contrary to Talal, and try to get him, direct him, to try to get Mr. Corona to incriminate him. It's pretty clear. If that's our reading of Talal, it looks like our reading of Talal then goes, your reading of Talal would go even beyond the Second Circuit's decision in the Hamad case. And it certainly goes well beyond any other circuit, many of which have warned that you can't insulate an investigation simply by hiring counsel. So we've got a number of, particularly Third Circuit cases, that would question whether Hamad is correct, Third and Tenth. Well, first of all, in Talal, this Court agrees with Hamad. Well, it said that they thought that the Hamad rule was well-founded, but it may be only referring to the case-by-case adjudication, which would be consistent with Talal's, with the description, your description of Talal, that they find one, two, three requirements, three requirements satisfied, and still find no violation of 2-100. Well, and I think that's a way to read Talal. But your Honor raises what I would call the House counsel problem, which is a valid concern. And that is, you don't want to create a rule that allows a career criminal, basically, and I think the paradigm case would be mob cases, to just always say, I'm represented by counsel, you can't approach me, and insulate himself from legitimate investigation by that means. That's the whole purpose of the, or one of the main purposes of the Talal requirements, is to avoid that circumstance, to carve out the House counsel situation, and to leave, so that you can't hire, insulate yourself by hiring House counsel. Let me turn to the question of the fake subpoena for just a minute. If your client had not been represented at this time, would it have been prosecutorial misconduct for the U.S. Attorney's Office to use a fake subpoena? There are cases that suggest it would not have been. That would be Martino, the first- Martino from the Third Circuit, which, now, if you want my personal opinion, I don't think that's a good decision, but it's certainly, there's a case out there from the Third Circuit. If it's not a problem to use a fake subpoena as an investigative technique, then why isn't this authorized by law? Well, because this is, there's something here that wasn't present in Martino, which is the, you have a represented target, and you have, on the other side, the U.S. Attorney directing an informant through this fake subpoena to get the target to incriminate himself. Now, that goes back to my original question, then. The real problem here is not the fake subpoena at all. It's just the fact that your client was represented. I think- So that any contact between Hadle that was directed, where the U.S. Attorney's Office was directing Hadle to talk with your client would have violated 2-100. I think, under these particular circumstances, I think that's probably true, under the Tlaib standard. In which case, by hiring counsel pre-indictment, your client has effectively insulated himself from any further investigative techniques that the U.S. Attorney's Office would ordinarily undertake. No, Your Honor, I disagree with that. I think that's exactly the circumstance that Tlaib addresses. If they had contacted Mr. Corona two years before, when Mr. Stewart was first retained, I don't think the Tlaib test would prohibit that. There aren't fully defined adversarial roles at that point. There aren't impending grand jury proceedings. And there were pending grand jury proceedings. Had Mr. Corona been summoned to a grand jury at this point? I don't think he was ever summoned to a grand jury. Was he advised at this point that he was a target? I think that came later on. So he had hired counsel, but he didn't know whether he was a target. He hadn't been summoned before the grand jury. What prompted him to hire counsel? Well, it became known that there was an investigation going on. I think initially, it was sponsored by Mr. Jaramillo, who Mr. Corona had fired from the Sheriff's Department. Word got out, as it does, that an investigation was going on. I don't think people really knew where they stood initially. But Mr. Corona hired Mr. Stewart. But I think even at the point where there became impending grand jury proceedings, there were not fully defined adversarial roles probably until April of 07 or thereabouts, when Mr. Stewart was clearly engaged with the U.S. Attorney's Office. He was writing letters on Mr. Corona's behalf. He was explaining why Mr. Corona was innocent. He was protesting certain tactics that the prosecutor were using. At that point, April 07, there were clearly fully defined adversarial roles. Your Honor, I see that- You'll still have your rebuttal. But I would like you to address the remedies question just briefly. And the reason is this. If we accept for the moment for argument that there was an ethical violation, it was just an ethical violation of the rules of professional conduct, which have its own enforcement mechanism. And I'm not sure I understand the sense of importing an exclusionary rule or any of the other remedies that you proposed to address this purported violation of an ethical canon. Well, Your Honor, I think it's helpful to look at Lopez, this Court's decision in Lopez, which is 4F 3rd something, I forget the page number, which talks about the purposes of exercising the supervisory power. And there are three of them. One is to provide a remedy. One is to preserve judicial integrity, and one is deterrence. And now in the context of Lopez, the district court had dismissed the indictment in a situation where there was no prejudice to the defendant. One competent counsel replaced another. And so the court in Lopez found that that was not a proper exercise of the supervisory power. This is different. I mean, first of all, if there is no case-related sanction for this violation, then effectively, practically, there's no remedy. The Office of Professional Responsibility has already, despite Judge Guilford's finding, has already said that this was appropriate conduct. The state bar, in two years, has done nothing. There is no remedy unless there's some case-related sanction here. And that, just to take a recent example from the Supreme Court, in Corley again, the court upheld the McNabb-Mallory rule involving the presentment requirement. And one of the reasons it did that was because without the McNabb-Mallory rule, without that exercise of the supervisory power, there's no remedy for a violation. Do we know why California has declined to do anything thus far, or why the Department of Justice concluded that there was no sanction appropriate here? We do not. I mean, is it possible that either one or both concluded that, in their view, it wasn't a violation of 2-100? I suspect that is why the Department of Justice did, but all we know about the Department of Justice is what the prosecution chose to share with the newspaper. Do we have any clue as to how California interprets 2-100, other than what we've said in our cases? There are California cases that apply it to prosecutors, so we know that much. And other than that, it's, under the circumstances specifically here, I don't think there are any cases on point. It does apply to prosecutors. And I would add this. In the revision proceedings that are now ongoing, the committee that reviews these things on behalf of the State Bar has so far rejected efforts to basically give prosecutors a carte blanche. That's the reforms that Judge Guilford referred to in his order. That's right, but I think Judge Guilford, with all due respect, had it wrong. I think what's actually happened is efforts by prosecutors in California to basically get a complete pass, an exemption from the no contact rule, have failed to date. Now, the story is not over yet, and we don't know how it's gonna turn out, but that's the story that I'm aware of to date. But the short answer, Your Honor, is no. I was a complainant to the State Bar. What I got was a letter telling me that my complaint was being closed because there was some other complaint that covered the same topic. I was invited to inquire further if I wanted more information. I have inquired further. I've received no response. That's where it stands, as far as I'm concerned. It's frustrating when we can't get an answer out of the State Bar. But, Your Honor, this is not an isolated instance. I cite an article in my brief that indicates that this is typical. If I may. I still have your rebuttal. Okay, thank you. We'll now hear from the government. Good morning. May it please the court. Quirt Sagel on behalf of Plaintiff Appellee United States. At counsel's table with me is Michael Raffel, Chief of our Criminal Appeals Section. The government's actions in this case regarding Rule 2-100 is generally permissible. Using an undercover informant to surreptitiously record a target pre-indictment is generally permissible. Our use of the bogus subpoena attachments, and let me focus. It was not a subpoena. It was not an official document. It was two pieces of paper that said on the top, subpoena attachment. Those are permissible decoys and acts of deception that the government can use pre-indictment. Nothing in this case took the government's pre-indictment investigatory context outside of the normal exception to the Rule 2-100, exception of authorized by law. The government did not violate the rule in this case. The remedies. The question that occurs to me when I read that rule, and I looked at the cases interpreting it, is whether that phrase authorized by law requires some kind of positive law, that is, you have to find some kind of a statute or rule that authorizes the particular action, or whether it simply means those things which prosecutors do which are not otherwise prohibited by law, and yours would seem to come within that second category. I agree, Your Honor, it would be the latter. You've got, you're okay if you're in the Third Circuit, and you're probably not okay if you're in the Second Circuit. Well, we would disagree with that for two reasons. One, let me be clear that we think Hamad was wrongly decided on two reasons. Right, but if you're in New York, you would think long and hard before you would have undertaken these actions. Absolutely. And if you were in the Third Circuit, if you were in New Jersey, you wouldn't hesitate. We would do the same actions. We would research the case law, we would get permission, and we would do what we did in this case. What we would point out in this case, I'll focus on Talal first. Talal, the three-part test that Mr. Klein refers to, the verbiage of this court's decision just says, that's when you determine whether Rule 2-100 even applies in the pre-indictment setting. It says it governs it. It doesn't say that's when there's a violation of the rule. And that's obviously correct, because there wasn't a violation. Those three things were present in Talal, and there was no violation of the rule in Talal. I would also point out that if the three-part test were to determine a violation, that would overturn prior cases by this court in Powell and Kenney. Both cases said exactly what the government's position is. Pre-indictment, covert contacts in an investigatory setting are permissible, generally permissible. Powell and Kenney were pretty bright line that it is permissible. Talal then said, you have to do a case-by-case adjudication. And that is the only part of Hamad that Talal seemed to adopt, is taking a case-by-case adjudication. The government has never said the rule doesn't apply to us. We always attempted to comply with the rule based on the laws that are out there. And even knowing Hamad's existence and Hamad's holding, the government at all times tried to comply with Hamad. What Hamad found to be misconduct is the use of an official document, trying to put the court's seal, the court's signature, the court's imperator on the government's action. And the government did not do that. We did not use official documents in this case, trying to even take the law that is not in this circuit and complying with that. Mr. Sigler, you've spent a third of your time, and why don't you get to the hard part? The hard part being the re? Of your case. Being the remedy?  Explaining why the statute was violated. Yes, Your Honor. Yes, Your Honor. Our position with regards to the statute is twofold. You have to look at the plain language, the plain language of the statute, the plain language of the word withhold. And I'd focus on the definitions the defendant has said withhold means. To omit to disclose upon request. To remain quiet. To refrain from giving. Not testifying about a subject. To hold back. To not disclose information. The plain language of withhold is exactly what the defendant did in this case. But why was the indictment a charge that he did it by false and misleading statements? Because, to use an example from this case, the defendant's actions in this case were thinking that Mr. Heidel would be in front of a grand jury and would need to give testimony. What he was hoping to have Mr. Heidel do is give answers that withheld the truth. Would give statements that either were outright false or only gave partial truth that would hide the real meaning. Using a factual example from this case, the boat transaction. The only witnesses to that boat transaction was Mr. Heidel and Mr. Corona. Mr. Heidel even testified. The reason he said George Jaramillo was there was to make the defendant believe there was another witness. The government might actually know about that information from someone other than the government. Mr. Corona's testimony, Mr. Corona would have wanted by his attempts on August 13th to convince Mr. Heidel to say, I gave you a boat and you gave me a check back. So it didn't look like an improper gift, but that I paid for it because checks are and the boat was done in front of people. What Mr. Corona was trying to get Mr. Heidel to do was testify to two-thirds of the transaction, both of which would appear legal and they would be truthful testimony from Mr. Heidel. But Mr. Heidel would be withholding the key fact of the transaction, the cash back at the end, which would make what appeared to be a legitimate transaction, the illegal transaction that it actually was. A concealment of a criminal act. And how would you distinguish that from what was charged in count six? Count five. The government appreciated the broad nature of the word influence in B1. And that's why count five charged a course of conduct charge from March of 2004 through August of 2007. Defendant's course of conduct of trying to influence Don Heidel over a period of three years of his testimony. You would also get to the, then what is more narrow, the word withhold is what we charge on a one day instance on that day, on August 13th, 2007, attempting to get Don Heidel to withhold. Withhold actions about the cash transactions. To withhold information about the cash part of the boat transactions or the cash bribes being the first one. And we appreciated how this statute is written. And what we would point out is, when you look at this statute, and even this court's ruling in Katami and the legislative history, what is abundantly clear is Congress's intent to make this statute as broad as possible to cover any acts of witness tampering or obstruction to make the conduct prosecutable. You look at subsection C, which is even broader than B1 or B2. That basically subsumes almost every section of the statute. There is tremendous overlap in the statute. We understand. So what are we to make of the jury's acquittal on the influence charge? I don't, with all due respect, I'm not sure if that is necessary for this equation. I think what is necessary for this equation is, was count six properly charged? And were there facts sufficient to find the defendant guilty of count six? There could be many reasons why they did not like count five. We're not in the jury room, we don't know. But at the posture we're at right now, was count six properly- If you had gotten a conviction on both of those charges, would you have requested, how does the court account for any overlap between the two charges? I'm trying to think what a jury is trying to think as they look at those charges back in the jury room and try to figure out for themselves what the difference is between withhold and influence. And you would have requested a separate sentence on each one of those counts. We would have. We would not have asked for merger. However, as Your Honor obviously knows, under the guideline calculations, it would have come out to the exact same thing. The only difference is the statutory maximum might have been twice as much. But I would point out, Your Honor asked a similar question to Mr. Klein about what if there was no count five or what if they were acquitted. And I want to address that because the appellant also put this in their reply brief, that it's been the government who changed their position and so forth. I'd like to just point out a couple things that focuses directly to your question. When the defense in the Rule 29, the oral Rule 29 prior to the verdict, which I think we cited in our brief, their position was, it was Mr. Heidel that was trying to influence the defendant. There was no evidence in the record to suggest the defendant was trying to get Mr. Heidel to say anything. In their closing arguments on January 7th of 09 in the transcript, only speaking to count six, count six, this is the defense counsel. Count six is August 13th tape. And the question is, is there evidence beyond a reasonable doubt that the defendant attempted to corruptly persuade Mr. Heidel to offer false testimony before the grand jury? Why would anybody believe that defendant is going to corruptly try and persuade Mr. Heidel to testify falsely before the grand jury? The charge is corruptly persuading somebody else to say something. But it's not by any different definition corruptly persuading Mr. Heidel to testify falsely in the grand jury. Well, the instruction says that the statute covers causing a portion of such statement to be misleading. To be misleading seems to me to be false. It would lead to a false impression. That's what the judge tells the jury. That's one way in which … Well, but since they could have convicted on that, do you think that was the correct instruction? Absolutely, Your Honor. Well, tell me why. The instruction itself we don't believe is there. Why do you think it's correct? Because to leave out something to make it … No, to be misleading. To be misleading, the example I gave before, if you only give 80 percent of the facts, but you leave out one crucial aspect of the facts, it gives a misleading impression, i.e., that a transaction is legitimate, that a transaction is lawful. And in this case, if Don Heidel were to testify about 80 percent truthfully, but withheld the one crucial bit of fact that, oh, there was a cash transaction at the end to cover the whole transaction, which is what Mr. Corona was attempting to corruptly persuade Heidel to do. But isn't that always true if a witness is testifying falsely? He doesn't tell the jury, I'm a liar. He leaves that fact out. So you could always say he's left out a crucial fact. I think … We think that, yes, that when someone testifies falsely, they can also withhold. But I don't think … So you could, any liar, any lying witness, you could get, as you got him under six. Under B1 and or B2A? Withholding, yes. I think not always, but most of the time, yes. Why not? I mean, this now goes back to the question that Mr. Klein started with a long time ago. And I said it's going to come back to you, and now it comes back to you. How is it that one is not entirely subsumed within the other based on your understanding or the interpretation that was offered up here? Well, two parts. What isn't covered? Well, if you look at B2A as a whole, it also includes the withholding of documents, records, and there's a third word, documents, records, and tangible objects, I believe. Other objects. Other objects. That is clearly not in B1. So there is a part right there that keeps B2A separate from B1. Other items of statutory construction says you look at the plain language. The plain language of withhold is clearly what we're talking about here. You also look at the entire statute as a whole and see what is the intent of the statute. So there is enormous overlap between all of the subsections. But what we would point to to give you an example, as I already stated before, which would fall under two things, is the example with the boat transaction with the cash back. If Don Heidel went in and only told about him giving a boat and Mike Corona giving a check back, at that point he has not lied about any material fact. He's withheld the crucial aspect of that transaction, the cash portion of it, but he hasn't actually made a materially false statement. If that is... Well, I doubt that if you'd gotten the conviction the other way, if the conviction had come on five instead of six, you wouldn't be making that argument. You would, in fact, say that, oh, that's a false statement because it's deliberately incomplete. So I'm not sure... I want to go back to what you said a minute ago about withholding a record because that may inform the meaning of the word withhold. 2A says withhold testimony or withhold a record, document, or other object from an official proceeding. B, alter, destroy, mutilate, or conceal an object. Would you treat mutilation of an object, cutting part of it out, as being withholding as stated in A? Or is that mutilation as stated in B? And the reason I ask that is it suggests to me if the meaning of withhold is to keep back, what somebody has done, in fact, is to not disclose a piece of a transaction, that sounds more like mutilation than it does withholding. It may. But I guess what I would point out primarily is facts fall in. The same facts oftentimes regularly fall within two different subsections or within two different statutes entirely. And it's our prosecutorial decision which subsection is the most appropriate. But it's not for us to interpret a statute. Is there any way that withhold testimony doesn't get covered, or to put it the other way around, is there anything in subsection B1 that doesn't get covered by withhold testimony? Either way, I'm not sure I understand why these don't become concentric circles. What's left out? Well, if you're talking about individual pieces, there are parts that overlap tremendously. I think there are parts that cover almost all of it. You can also add in to their definition of what withhold should mean now. It almost is completely subsumed by the word prevent and be. Almost? Is there some exception you can point to? To their example or our example? You can come up with an example. Where is it not? I mean, almost is critical. If it is entirely subsumed, then rules of statutory construction say that's not the way to construct the statute. We're supposed to find some meaning in each of the words. And right now, I haven't figured out what meaning there is in those words that's not already covered elsewhere in the same statute. Well, and I think Your Honor points out a very good point, is that the words throughout the statute overlap tremendously to guarantee that it could fit into any of the subsections. Those rules of statutory construction tell us not to say they overlap completely. Almost is your saving grace. That's the reason you keep saying almost. But we don't know what almost means because we can't figure out what isn't covered. Well, and I guess what I would first point out is you only need to turn to that if there's any ambiguity or vagueness or confusion in the statute. There's no ambiguity or vagueness with the word withhold. And I believe that you look at that subsection and you can absolutely know what you're being charged with. They had no problem at trial understanding and submitting that same jury instruction, stipulating to that jury instruction with the government. They knew what it meant and they knew what it stood for that if you only withhold part of your testimony and don't give full testimony, don't give the full truth, that is separate than just outright saying a lie. The example is you do a transaction with four people. You go in there and you name four totally different people, that's making a false statement. You go in there and you only say three of the names and you withhold the fourth person, that's withheld. And there's no lie or false statement about who that fourth person is. There are factual scenarios that can fall under withholding that does not fall into a lie or a false statement. Now, if the question is... I mean, again, if the conviction had come back on count five, you wouldn't be making this argument because it's easy to make the argument, who was involved, A, B, and C? Mute on D. That's false testimony if you know that D's involved as well. You may be withholding D's name, but you're also testifying falsely by saying the people involved were A, B, and C without making mention of D. Well, and I guess what I would point out is for taking out the course of conduct part of count five, but count August 13, 2007, is a three-hour conversation of defendant attempting to get Heidel to either lie or withhold. I haven't focused on this, so I just hadn't thought about it. Are you telling me that count five specifically has a time period that covers the gamut of the two and a half years, whatever it is, and count six is specifically about that one day only? That is correct, Your Honor. Count five, which was charged under the influence prong, goes from the day that the defendant fired George Jaramillo and his and Don Heidel's meetings to figure out how they're going to deal with George Jaramillo going to the federal government all the way through the end of their meeting and the influence. So that's three years, March of 2004 through August of 2007. And that includes the date that's in count six, but count six is different because it focuses specifically on that one date? That is correct, Your Honor. And if I could turn briefly... I'm going to follow up on Judge, and where do we find that in the record? The indictment. The indictment, which I can give you the ER site to that if Your Honor wants. The indictment is 4-4-ER 4-6-6 and 4-7-3. 4-4-6 to 4-7-3. Okay. If I could turn briefly just to the remedies section... Please do. With regards to the remedy, I think if we find no violation, which we do not believe there was a violation here... Then remedy's not a problem. Assume for this discussion that we determine there's a violation. Correct. I would focus on the two cases Mr. Klein even came up here and talked about, Talal and Lopez. And in both of those cases by this court, both of those courts said 2-100 is fundamentally concerned with the conduct of attorneys and attorney relationship. They do not provide rights in a defendant. Not only do those two cases say that, the State Bar rules say nothing in the State Bar rules create rights in the defendants. The Code of Federal Regulations, based on the McDade Amendment and the McDade Amendment itself, nothing creates a right in the defendant. So he has no right to expect a remedy. That's first. The second is, even in a scenario, they cite Corley. Well, Corley, there was a federal statute, 3501, the presentment clause, the presentment statute that you must be presented to a magistrate. There the defendant had a right under a federal statute and they asked for a remedy. But even circumstances worse, a defendant has a right. I would focus on the Herring case. There the defendant's Fourth Amendment right was violated and the Supreme Court provided no remedy. Just because a right, and in those scenarios, a constitutional right is violated, does not signify a remedy is necessary. No remedy was provided in Herring. And in this case, a remedy was provided. The most appropriate remedy, which is to have the State Bar Oh, the State Bar doesn't seem to be doing anything. But as I believe Judge Bybee stated earlier, that might speak to something. Maybe they disagreed with Judge Guilford. Maybe they looked at Powell and Kenney and looked at their structure and said, especially since 1-100 requires a willful violation, and they determined there was no violation. It wasn't, as the defendant likes to say in his brief, that it was dead on arrival or it was foreclosed. The State Bar investigated or could investigate and at all times, Judge Guilford said I'm leaving it to the most appropriate authorities to adjudicate their own rules, the State Bar. They always got a remedy in this case. They just don't like the outcome. And speaking as the person who was referred to the State Bar, they always look at it, and I don't know if the right word is glib or nonchalant, but they always look at it as, oh, there's nothing there. As the person whose bar license is on the line, absolutely we take it seriously. That's the very reason we do do the research and we do comply with HMAD or attempt to comply with the case law to make sure that we are doing everything in accord with the law as we see it. We can't foresee what a decision is done later, but we can look at Powell and Kenney, which says pre-indictment covert contacts are permissible. We can look at Talal that says they're generally permissible unless there's clear misconduct. The use of two pieces of paper citing all of the cases which allow governments to decoy and deception. Two pieces of paper are innocent in comparison to as Martino case talked about, dressing up as sheiks in the Abscam case, providing the chemicals to get the defendants to be able to make methamphetamine, which was the Russell Supreme Court case, providing all the loading docks in a I can't think of the type of case it was, but the types of deception that we're talking about in this case is minimal in comparison. And Judge Pipey asked the question of if we had used subpoenas would it have made difference or if he wasn't represented would it make a difference? The answer is of course they'd have nothing to complain about if he wasn't represented. I'd also point out if the U.S. Attorney's Office wasn't involved, our case agents met with themselves. There'd be no violation here. We want government attorneys' involvement to make sure that the conduct is not inappropriate, to make sure that the informant is not doing things inappropriate and in violation of the law. We want and I think this court has many times said we encourage the attorneys to be involved to guarantee that rights are not violated. The only reason they have any claim here is because the U.S. Attorney's Office was working with their agent and their informant which this court should encourage, not discourage because in this same case there'd be no violation if just the special agents with the FBI and the IRS made that document without ever consulting with attorney and providing it with the informant. We've let you go over so much I'm going to ask you a background question which I would it's not right on the point but I could get the I read what you present in the briefs and you talk about bribes. What were the bribes paid for? What was the quid pro quo? The quid pro quo of what Don Heidel testified at trial was basically access to the resources of the Sheriff's Department That's the vaguest thing I've ever seen. What does that mean? It was probably not as negotiated as well it was but it was to obtain business deals and there were attempts at business deals that. Were these the private prisons? Initially before hand that was one of the thoughts. Those were the things that Heidel was interested in? That was one of the business deals he talked about possibly getting was the privatization of jails and moving inmates from the Orange County Jails into these private jails and making money off that One was a legal withdrawal agreement Was one of these things actually carried out or was it just access? With regards to the legal referral agreement and these case referrals, that one did come to some fruition There was money that was paid out that was testified to at trial regarding a death of an Orange County deputy and the money that was referred over to pay down that loan. There were carried out It clearly was not as lucrative to Mr. Heidel as what he got himself into but what his hopes were and what the agreement was were quite different I must say as somebody who spent a lot of time writing about bribery, I've never seen such a vague bribery case Well, it was I don't know if the answer is it was an honest services case but it did include bribery as well That's a set of issues we don't have to deal with That is correct, Your Honor And with that, unless Your Honors have any further questions, I will submit on a brief Thank you Your Honor, I still did not hear an example of conduct that would violate the influence problem What do we do with the government's answer to Judge Clifton's question? As I look at those indictments and I had not focused on this before, but it is clear that that one count refers to a whole course of conduct covering about three and a half years and the other one, the count on which he was convicted, is confined to August 13, 2007, which I take it is his meeting with Mr. Heidel Sure, that's correct No dispute about that I think the important point, though, is that count 5 is the broader of the two counts In other words, the count he was acquitted on is the broader of the two and it clearly includes August 13, 2007 Although Heidel offered some fairly vague testimony about efforts before August 13, 2007, the overwhelming focus at trial of both counts was August 13, 2007 Count 6, indeed, was limited to August 13, 2007 Could the government have charged separate days as separate counts? You said you tried to influence Mr. Heidel on August 13, 2007, but you also tried to influence him back in July and back in March and back in 2006 and then charged all of those as separate counts? I think probably so It could have charged all of those as influence It would have had to have been as influence Yes, what they could not have done, in my view, is charge both as influence and as withhold or, for that matter, to charge them just as withhold because it's not withholding The significance to me of the fact that both Count 5 and Count 6 charged August 13, 2007 is that it explains why in Count 6 the government has tried to shoehorn this conduct into a statute that doesn't apply because it could not have charged both Count 5 and Count 6 under the influence prong But it could have simply amended Count 5, for example, to say from 2004 until August 12, 2007 and then charge the other one also as influence as August 13 It probably could have but the point, Your Honor, is the most powerful evidence the government had in this case was that August 13, 2007 tape that it obtained, in our view, improperly, and it wanted to get two bites of that apple I'm not sure this has any legal significance but it does begin to suggest to me at least a degree of coherence in what the jury might have done which is because Count 6 is more specific focuses on the day that has that conversation you just referred to it's not illogical to think a jury says okay, we're looking at that convict on that look at this broader range of so many years we've already dealt with the conversation and tried to decide if they could make a conviction separate from Count 6 out of what they saw in Count 5 I mean, logically, in legal terms a conviction in Count 6 probably should lead directly to a conviction on Count 5 but I can sort of understand how the jury may have approached it and decided they must mean separate things and use the chronology rather than the legal terminology which they have difficulty understanding and separating them out I'm not sure that has any legal significance but at least it does suggest to me what the jury might have been doing this is one of the rare instances where Mr. Sagal and I agree I can't begin to parse what the jury did in this case, I honestly can't it's possible Your Honor is right it's possible there's some completely different explanation it's not unusual for us to be staring at jury verdicts and scratching our heads and wondering but nobody ever lets me serve in a jury so I don't get to find out I've never heard of it I'm always the first for every challenge, I'm out of there when I tell them I'm a defense lawyer that's usually it this is important we took both counsel over time we do want to hear what you have to say I appreciate that Your Honor we still do not have an example of a case of influencing that is not also a case of withholding Mr. Sagal when he started to answer that question mentioned that the withhold provision includes documents and that kind of thing and is broader that doesn't answer the problem here the whole point is that the withhold circle if we're drawing a Venn diagram is a big one as the government reads it and the influence prong of 1512b1 is completely subsumed within that circle what we were looking for is an example of influencing that doesn't fall within that withhold circle well let's try this suppose you've got a transaction that involves A, B, and C X, Y, and Z and the guy testifies the transaction involved X, Y, Z, and Q and actually on the periphery some place there was somebody else who's not mentioned now the not mentioning part might be withholding but if you eliminate the possibility of that other person it was just X, Y, and Z and the testimony is X, Y, Z, and Q would that qualify as influencing the testimony to give the false part to offer up Q but not withholding because in fact he did identify X, Y, and Z I don't think so your honor because I think that again the government's view is that withholding the truth is what we're talking about here and in fact what Mr. Corona and Mr. Heidel were talking about if you read the transcript in the light most favorable to the government is lying about things lying about whether money changed hands lying about how the boat transaction worked and that is influencing testimony the government here tried to characterize it as a 3 part transaction we're not going to talk about part 3 so they're trying to make what you're describing as the false testimony what is false testimony into a withholding case by saying there's a piece that's held back I don't think that constitutes withholding under the plain language of the statute under any case that's ever interpreted the statute there are cases that would fill this room under 1512b1 where exactly that type of thing happens people talk about a transaction and they discuss how they're going to lie about the transaction and the lie can include adding details or subtracting details or making up details those are all treated as influencing testimony there is no case none that we have found or that the government has cited where that type of conduct is treated as a violation of 1512b2a there's just none so I think that's important the one other point that I wanted to make and of course I'll respond to any questions the court may have is on this question of remedy the Poe case which the government likes so much says specifically that suppression is a possible remedy for a violation of rule 4.2 and the reason that case related sanctions may be appropriate here where they wouldn't be for an ethical rule say about how to set fees or sort of client attorney relations like that is that rule 2-100 rule 4.2 and the model rules is one of those rules that is designed to protect the integrity of the judicial process it is designed to protect the adversarial process it's designed to protect and to ensure the integrity of the evidence that's presented in court and because it is that kind of rule as this court recognized in Talau and in Lopez and in other cases it is one of those rules where this court can properly or a district court can properly exercise its supervisory power discussed in Lopez to do those things that Lopez talks about to provide a remedy to preserve judicial integrity and to deter future violations it's not like some of the other rules of ethics that really have nothing to do with what happens in court and that would be inappropriate to use as a basis for a judicial sanction unless the court has further questions Apparently not. Thank you. We thank both counsel for your very helpful arguments. The case just argued is submitted and the next case in our calendar today is
judges: Noonan, Clifton, Bybee